RALPH C. JOHNSON & als., *in Eq.*, *versus* TIMOTHY THORNDIKE & als.

The general equity jurisdiction of this Court does not extend to the enjoining of a city treasurer from negotiating loans and otherwise carrying into effect the votes of his city government.

And § 1, c. 239, of the Pub. Laws of 1864, contains within its provisions only two classes of cases in which the Court can thus intervene; (1,) when any city votes to pledge its credit, raise or pay money "for any purpose" not authorized by law; and, (2,) when "any agent or officer thereof attempts to pay out the money of" his city "without authority."

If the money to be raised is voted in good faith to pay any liability or contract within the contemplation of law, this process will not lie, but the city will be left to its legal remedies.

BILL IN EQUITY, brought by Ralph C. Johnson and twelve other "taxable inhabitants" of the city of Belfast, against Timothy Thorndike, as treasurer, and Axel Hayford, as

mayor of said city. The Belfast & Moosehead Lake Railroad Company, certain persons named as directors of said railroad company and the city of Belfast, defendants. The case was heard on bill, answer and proofs.

The bill alleged substantially, that, by the charter of the Belfast & Moosehead Railroad Company, enacted by the Legislature of 1867, it is provided that certain cities and towns may subscribe for any amount of stock therein, by a vote of two-thirds of the legal voters of any such city or town, present at any meeting legally called therefor, not to exceed twenty per cent. of the amount of the valuation of such city or town, that such vote shall be obligatory, and such city or town may issue their bonds therefor, with interest payable semi-annually at six per cent., and for a period not exceeding thirty years, and all stock so subscribed for to be represented in said corporation by the municipal authorities; that, in 1868, the Legislature passed an amendatory Act wherein it is provided that the city of Belfast, may, by a vote of three-fourths of the legal voters of said city, present and voting, at any legal meeting called therefor, subscribe $140,000 to the stock of said company, in addition to the amount specified in the original Act, and may issue its bonds therefor, payable in thirty years, with interest semi-annually, for a sum sufficient to raise that amount in cash.

That, on the 5th Aug., 1867, the city council of Belfast passed an order declaring that, — whereas the legal voters of the city, on April 6, 1867, by legal vote authorized the city government to subscribe for 3,604 shares of the non-preferred stock of the B. & M. L. R. R. Co., therefore, ordered, that the municipal officers of the city are authorized and instructed to subscribe in the name and for the city, for 3,604 shares of $100 each of such stock, provided it can be done without subjecting the city to the payment of any sum not duly and legally assessed by the company; that, in pursuance thereof, the subscription was duly entered upon the books of the company, Dec. 2, 1867.

That, on April 6, 1867, the city council duly passed another order, declaring that, whereas the legal voters of the city, on the 28th March, 1868, by legal vote, authorized and empowered the city government to subscribe for 1,396 shares of said railroad stock, — therefore ordered, that the municipal officers are authorized and instructed to subscribe for that number of shares of the preferred stock of the company, upon the same terms and conditions as the former subscription was made.

That, on Aug. 12, 1868, the city council duly passed another order, embracing substantially all the provisions of the preceding ones, excepting the conditions therein mentioned, and in lieu thereof declaring that the subscription is subject to all assessments made or to be made by the company, and annulling all inconsistent orders; that the city council further ordered, that the city treasurer be authorized to make a loan in behalf of the city for a sum sufficient to pay the subscription, and to issue city bonds therefor, to be approved by the mayor; that the bonds be negotiated, and the proceeds arising therefrom be set aside for the payment of the company's assessment upon the city stock subscribed for; that the city council passed another order authorizing the city treasurer to make a temporary loan for a sum sufficient to cover the first assessment upon said stock, and to secure the same by pledging the said bonds as collateral security; that, on September 2, 1868, the city council passed another order, appointing the mayor, with such other person to assist him as he may choose, a committee to negotiate the sale of said bonds, and authorizing the committee to assist the city treasurer in effecting the temporary loan.

That said railroad company was duly organized under its charter, and in April, 1868, Axel Hayford, then and since mayor of the city, was elected president of the directors of the company; that, at its annual meeting held July 1, 1867, the corporation established certain by-laws providing for the mode [described] of calling its meetings, and also providing that no assessment whatever shall be made upon any

portion of the shares until the full amount of the estimated cost of the road from Belfast to Newport, exclusive of rolling stock, shall have been first subscribed for by responsible parties in accordance with the rules of the directors, and in pursuance of the vote of the city, except for a survey and location.

That the subscription contained a stipulation that no assessment whatever, except for a preliminary survey and location, shall be made upon the shares subscribed for, nor shall the work be commenced until the full amount be raised by the subscription, and thus the completion of the road be secured without mortgage or incumbrance; that the subscriptions of certain towns named contain certain conditions not annexed to the subscriptions of other parties.

That, on 8th July, 1868, the acting directors of the corporation contracted for the building of said railroad, and voted an assessment of fifteen per cent. on all the stock, in violation of its by-laws and the terms of subscription; and that no notice of the meeting, or of the object of the meeting at which said assessments was ordered, was given to three of the directors, and that they were not present.

That the meeting of the stockholders for the purpose of choosing directors, holden on July 1, 1868, was not called in compliance with the by-laws, for the reasons named; that the assessments ordered by said persons claiming to act as directors being unauthorized, the votes of the municipal authorities providing for its payment by the issue of bonds, or by temporary loan, were unauthorized and illegal; that the object is not one for which the city can borrow money, and that the purpose for which the city voted to pledge its credit, and pay from its treasury the money to be raised as aforesaid, is other than those for which it has the legal power.

That the conditions of the by-law before mentioned, providing when assessments may be made, have not been complied with, because, (1,) the subscriptions of the city of Belfast, and of the towns of Newport, Troy, Thorndike and

Brooks, were conditional, and made upon terms different from those of individual subscribers, (2,) the subscriptions of the city of Belfast, made in Dec., 1867, and May, 1868, were based upon the vote of the municipal authorities, providing that the city was to be subjected to the payment of any sums not duly and legally assessed by the directors ; (3,) when such assessment was ordered a portion of the route between Belfast and Newport had not been located or surveyed, no estimate of the cost between said points made, and the acting director did not act in good faith toward the stockholders, and (4,) a large portion of the stock subscribed for has not been taken by "responsible parties," and that the acting directors did not act in good faith in receiving certain subscriptions named, as made by responsible parties.

The prayer of the bill was, *inter alia*, that Thorndike, the city treasurer, and the persons named as committee, be enjoined from making a loan for and in behalf of the city for a sum sufficient to pay the city's subscription, or a temporary loan to cover the first assessment; and for general relief.

Thorndike and Hayford, jointly and severally answered to the bill, admitting the provisions of the charter, and Act amendatory, as alleged, the passage of the several orders mentioned, the organization of the corporation and the establishment of the by-laws alleged; denying the terms of the city subscription; alleging that the meeting for choosing directors was called in compliance with the by-laws; that the whole route from Belfast to Newport had been located and surveyed sufficiently to enable the directors to make a suitable estimate of the cost of the road between the points named, and that sufficient stock had been subscribed by responsible parties to cover the cost as estimated by the directors, and that their adjudication on said two points was conclusive ; and that said directors acted in good faith, &c.

The view taken by the Court renders the report of the proofs unnecessary.

*Bion Bradbury* and *Joseph Williamson*, for the complainants.

*A. W. Paine*, for the respondents.

DANFORTH, J. — This is a bill in equity asking an injunction against the city of Belfast and certain of its officers, in regard to certain proposed acts therein set forth. It is clear that it cannot be sustained unless it comes within the provisions of the Act of 1864, c. 239. *Hale & als.* v. *Cushman & als.*, 6 Met., 425.

It therefore becomes necessary to ascertain the true intent and meaning of that statute. So far as it has any bearing upon the question now before us, it is in the following words : — " When any * * city * * * votes to pledge its credit, or to raise by taxation, or to pay from its treasury, any money, for any purpose other than that for which it has the legal right and power, or any agent or officer thereof attempts to pay out the money of such city * * * without authority, the Supreme Judicial Court may, upon the suit or petition of not less than ten taxable inhabitants thereof, briefly setting forth the cause of complaint, hear and determine the same in equity." This language appears to be clear and free from ambiguity. There are two classes of cases, and only two, where the Court is authorized to interfere ; where the city or town attempts to raise or pay money, or pledge its credit for a " purpose" not authorized by law, and where any "agent or officer thereof attempts to pay out the money of such city or town without authority." There are no words in the statute, indicating in the slightest degree an intention on the part of the Legislature, to require or to authorize the Court to interfere with towns, so long as they keep within their legitimate sphere and make such contracts as the law authorizes, and raise money or loan their credit for the " purpose" of carrying out such contracts, whether in so do-

ing they act with prudence and wisdom, or otherwise. The "purpose," the object to be accomplished, is the test by which we are to judge of the right of the Court to interfere, and not the results of that "purpose" when accomplished, nor the ways and means by which it is to be accomplished. It is not a matter of inquiry with the Court whether the town may, or may not have a good defence in law to an action brought against it, founded upon the subject matter in regard to which complaint is made. If the money to be raised is voted in good faith to pay any liability or contract within the contemplation of law, this process will not lie, but the town will be left to its legal remedies and defences.

If a town were thus to vote money to pay a contract for the repair of highways, or to pay damages arising from an alleged defect in its ways, it would hardly be contended that, in a process of this kind, the Court would or could enquire whether there was in either case a good cause of action against the town, or grant the injunction if there were not. The subject matter being within the legal rights and obligations of the towns and their officers, they must be left free to act as their interest may require, according to the dictates of their judgment, under their legal liabilities and the sanction of their oaths. So, too, when the allegation is that the agent or officer is about to pay out money without authority, the only inquiry which the Court can properly make, is whether the "purpose" for which the money is to be paid is within the legal sphere of the town, and the officer has been duly authorized by law or by the proper vote.

It only remains to apply these principles to the case before us.

By the charter of the Belfast & Moosehead Lake Railroad Company, — Private Laws of 1867, c. 380, § 19, — the city of Belfast is authorized by a vote of two-thirds of its legal voters present at any meeting duly called therefor, to subscribe for stock of that company to any amount not

exceeding twenty per cent. of the amount of its valuation. By an amendatory Act, Private Laws of 1868, c. 626, § 5, the same city was authorized, "by a vote of three-fourths of the legal voters of said city, present and voting at any meeting legally called therefor," to subscribe for additional stock to the amount of one hundred and forty thousand dollars.

It will be observed that, by either of these Acts, no conditions or limitations are attached to the right of Belfast to subscribe for stock, except as to the amount, and the number of votes required. Both of these conditions have been complied with, and it is conceded that the Acts are within the constitutional power of the Legislature. It necessarily follows that the subscription for stock by the city is a contract within its "legal right and power." The votes of the city to raise money, or to issue bonds, and the acts in pursuance thereof, complained of and sought to be enjoined, were passed at legal meetings, and are for the "purpose" of fulfilling this contract. The "purpose," then, is a legal and not an illegal one. In the plaintiffs' bill there is no allegation asserting the illegality of the contract; nothing of the kind is suggested in the arguments of counsel.

It is, however, suggested that there are certain conditions in the contract itself which have not been complied with, and certain malfeasances or non-feasances on the part of the corporation, by which the city is released from the performance of its part of the contract. This may all be true, and yet it does not follow that, because there are illegalities on the part of the corporation, the same or any others exist on the part of the city. It is the alleged wrongdoing of the city and not of the corporation we are called upon to remedy. If the city has a legal defence to their contract, it is at their option to make it. The law makes it the judge of its own interest in this respect. It having been authorized to make the contract, it may insist upon such terms and conditions as its interest may seem to require. If subsequently it should appear to the city that its interests re-

Thomas *v.* Mayo.

quire a waiver of any of these terms or conditions not required by law, there is no legal objection to that waiver. The Court has no power to interfere to control the judgment or discretion of the city when exercised within the limits prescribed by law.

Besides, whether the conditions and terms of the contract have, or have not been complied with by either party, involves questions of fact which the parties have a right to submit to a jury, — a right which the statute does not contemplate shall be taken from them by this summary process; and which the courts, or any third party have no power to interfere with.

So far as the proposed acts of the officers complained of are concerned, the case does not show that they are "without authority," but supported by the votes of the city, legally passed, in regard to a matter upon which the law has authorized the city to act. Our conclusion, therefore, is, that the acts of the city, and the proposed acts of its officers set out in the plaintiffs' bill, and sought to be enjoined, are not such as are contemplated in the statute, and not within the jurisdiction of this Court.

*Bill dismissed with costs.*

APPLETON, C. J., KENT, WALTON and BARROWS, JJ., concurred.